IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEREK T. CROOM, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 22-CV-3844 |
| | : | |
| BLANCHE CARNEY, *et al.*, | : | |
|     Defendants. | : | |

## MEMORANDUM

**GOLDBERG, J.**                                                                                                                                October 11, 2023

      Plaintiff Derek T. Croom, proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983 regarding his conditions of confinement while incarcerated at the Detention Center, a unit of the Philadelphia Department of Prisons. Currently before me are Croom's Fourth Amended Complaint ("FAC") (ECF No. 15),[1] his Motion for Leave to Proceed In Forma Pauperis (ECF No. 11), Prisoner Trust Fund Account Statement (ECF No. 12), and Motion to Appoint Counsel (ECF No. 16). Because it appears that Croom is unable to pay the filing fee, I will grant him leave to proceed in forma pauperis. For the following reasons, I will dismiss Croom's FAC for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[1] By Order dated December 30, 2022, I previously explained that "'an amended pleading supersedes the original pleading and renders the original pleading a nullity.'" (ECF No. 8 at 2 n.1) (citing Garrett v. Wexford Health, 938 F.3d 69, 82 (3d Cir. 2019)). I also noted that "the most recently filed amended complaint becomes the operative pleading[,]" and that "the filing of amended and supplemental complaints effectively constitutes an abandonment of any prior complaints filed by a plaintiff." Id. (citations and internal quotations omitted). Croom filed two additional pleadings after I issued the December 30, 2022 Order. (See ECF Nos. 13, 15.) These pleadings were docketed as Croom's Third and Fourth Amended Complaints, respectively. Accordingly, the operative pleading at this time is Croom's Fourth Amended Complaint (ECF No. 15) entered on the docket on March 29, 2023. See Garrett, 938 F.3d at 82.

I.      **FACTUAL ALLEGATIONS**[2]

Croom alleges that Blanche Carney, Commissioner of the Philadelphia Department of Prisons, "failed to provide humane conditions and protection against COVID-19 in violation of the United States and Americans with Disabilities Act." (FAC at 2.) Croom claims that the "policies and restrictions implemented in response to" COVID-19, along with staffing shortages in the Department, subjected him to "illegal and unconstitutional" conditions of confinement. (Id.) Croom claims that or about July 20, 2022, he was housed in a cell with an inmate who "had tested positive" for COVID-19, that he "caught" COVID-19 from his cellmate, and that he was then "isolated for (6) six weeks" before he was "medically cleared" by prison medical staff and housed in general population.[3] (Id. at 1.) Croom asserts that he was subsequently transferred to the Detention Center and placed in general population in D-Dorm.[4] (Id.) Croom complains that he and other inmates were transferred or removed from various housing units[5] and placed in isolation on multiple occasions from September of 2022 through February of 2023. (Id. at 1-2.) Croom alleges that some of the inmates who were transferred tested positive for COVID-19, and that these transfers put him in danger from COVID. (Id.)

---

[2] The factual allegations set forth in this Memorandum are taken from Croom's FAC. (See ECF No. 15). This opinion adopts the pagination assigned to the FAC by the CM/ECF docketing system.

[3] Croom also claims that his "breathing has changed" after he contracted COVID-19. (FAC at 2.)

[4] Croom alleges that he was transferred to the Detention Center more than six weeks after he contracted COVID-19 from his cellmate, but it is unclear from the FAC where he was incarcerated in July of 2022. (FAC at 1.) It appears from his original Complaint (ECF No. 1) filed on September 26, 2022 that he was incarcerated at Curran-Fromhold Correctional Facility at that time. (Compl. at 1, 3.)

[5] Croom specifically mentions being housed in D-Dorm, G-Dorm, and I-Dorm in his Fourth Amended Complaint. (FAC at 1-2.)

Croom asserts that he "has been isolated since" January 15, 2023 at the Detention Center and "is unable to do legal work, because [he receives] no out of cell time." (Id. at 2.) He also alleges that he has received "no recreation at all." (Id.) Croom also contends that certain conditions at the Detention Center violated his constitutional rights separate and apart from the facility's response to COVID-19. Croom specifically alleges that the Detention Center has lead paint, asbestos, and rodent problems and that the Commissioner "know[s] about these dangerous conditions[.]"[6] (Id. at 2.) Based on his allegations, Croom seeks a judgment of $1,000 in compensatory damages and $50,000 in punitive damages from each Defendant, as well as $65,000 in wages with interest and court costs. (Id. at 3.)

## II.     STANDARD OF REVIEW

I will grant Croom leave to proceed in forma pauperis because it appears that he is not capable of paying the fees to commence this civil action.[7] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires me to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), see Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotations omitted).

"At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the pro se] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only

---

[6] Croom also asserts that the Detention Center was the subject of a previous condemnation lawsuit by female prisoners, but he provides no additional detail regarding that case. (FAC at 2.)

[7] As Croom is a prisoner, he is subject to the obligation to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. See 28 U.S.C. § 1915(b), (h).

whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" Shorter v. United States, 12 F.4th 366, 374 (3d Cir. 2021) (quoting Perez v. Fenoglio, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. Iqbal, 556 U.S. at 678. As Croom is proceeding pro se, I will construe his allegations liberally. Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (citing Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244-45 (3d Cir. 2013)). While a court must liberally construe pro se pleadings, "liberal construction of a pro se amended complaint does not mean accumulating allegations from superseded pleadings." Argentina v. Gillette, 778 F. App'x 173, at 175 n.3 (3d Cir. 2019).

### III. DISCUSSION

Liberally construed, Croom's FAC appears to allege claims based on his contracting COVID-19 while incarcerated, and the overall conditions of confinement at the Detention Center. Croom raises these claims pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be asserted in federal court.[8] "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting Rode, 845 F.2d at 1207)). See Iqbal, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability

---

[8] Although Croom also cites the Americans with Disabilities Act in his FAC, there is no apparent basis for a claim under the ADA, and I will not address the ADA further.

4

is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

### A. Caption-Only Defendants

The Clerk of Court designated this case as Civil Action Number 22-3844 when the case was first opened, but Croom appears to have mistakenly captioned his FAC with the docket number for a different case he filed three days before this matter, Croom v. City of Philadelphia, et al., Civil Action Number 22-3817. (See FAC at 1.) The caption Croom placed on the FAC lists the City of Philadelphia, the Philadelphia Parking Authority, and "Philadelphia Police Officers" as the Defendants, but Croom does not make any substantive allegations against them anywhere in the body of the FAC.[9] (Id. at 2.) Construing the FAC liberally and in conjunction with Croom's pleadings in Croom v. City of Philadelphia, et al., Civ. A. No. 22-3817, it appears that Croom inadvertently used the caption for that matter when drafting his FAC, and that the City of Philadelphia, the Philadelphia Parking Authority, and "Philadelphia Police Officers" are not the Defendants he seeks to sue in this case. Appreciating Croom's use of a mistaken caption, I understand the FAC to assert claims against Blanche Carney in her individual capacity,[10] as well municipal liability claims against the City of Philadelphia under Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 694 (1978) (local governments are not liable under § 1983 "for an injury inflicted solely by [their] employees or agents," but are liable if a municipal custom or policy caused the plaintiff's injury).

---

[9] To the extent Croom refers to Dollar General in the FAC, there are also no factual allegations against Dollar General in the body of the FAC. (FAC at 3.)

[10] Blanche Carney, Commissioner of the Philadelphia Department of Prisons, is the only person identified by name in the FAC. Croom previously named Blanche Carney, CFCF, the Medical Department at CFCF, Aramark, and the Philadelphia Police Department as Defendants in his original Complaint in this matter. (Compl. at 1-2.)

Accordingly, the Clerk of Court will be directed to amend the caption in this matter to reflect that the Defendants named in the FAC are Blanche Carney and the City of Philadelphia. I will also direct the Clerk to terminate CFCF, the Medical Department at CFCF, Aramark, and the Philadelphia Police Department from the docket as the FAC supersedes the original, these entities are no longer named as Defendants, and Croom makes no substantive allegations against them in the FAC. Croom is reminded to use care and precision when preparing his submissions and sending them to the Clerk of Court. All future submissions should be clearly and accurately captioned with the appropriate Civil Action Number and the corresponding Defendants so that the Clerk of Court can docket them in the relevant matter and avoid confusion.[11] Additionally, Croom should properly title future submissions to ensure the Clerk of Court, and the Court itself, can appropriately consider his submissions and understand the relief he seeks.

    **B.    Claims Against Commissioner Carney**

        **1.    Claims Regarding COVID-19 Response**

Croom's FAC asserts a claim based on his exposure to, and contraction of, COVID-19.[12] (FAC at 1-2.) In its decision in Hope v. Warden York County Prison, 972 F.3d 310, 325-31 (3d

---

[11] Example:

| | | |
|---|---|---|
| **DEREK T. CROOM,** | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 22-CV-3844** |
| | : | |
| **BLANCHE CARNEY,** *et al.*, | : | |
|     Defendants. | : | |

[12] As it appears that Croom was a pretrial detainee at the time of the events in question, the Fourteenth Amendment governs his claims. See Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005). However, the standard under the Eighth Amendment and Fourteenth Amendment for claims

6

Cir. 2020), the United States Court of Appeals for the Third Circuit affirmed that "[t]o establish deliberate indifference [in the COVID-19 context, the prisoner plaintiffs] must show the Government knew of and disregarded an excessive risk to their health and safety." Id. at 329 (citing Nicini v. Morra, 212 F.3d 798, 811 (3d Cir. 2000)). The Court of Appeals further held that "[t]he context of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference," and that, in evaluating this context, a reviewing court must defer to the expertise of both medical officials and jail administrators, and not assume a constitutional defect where concrete action has been taken in response to the COVID-19 pandemic as constitutional rules "are not subject to mechanical application in unfamiliar territory." Id. at 329-30 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 850 (1998)). Thus, where the facility has taken concrete steps towards mitigating the medical effects of COVID-19 on a detention facility, a prisoner will fall "well short" of establishing that the facility and its staff were deliberately indifferent toward his medical needs in light of the virus even though they cannot entirely "eliminate all risk" of contracting COVID, notwithstanding even serious preexisting medical conditions the prisoner may have. Id. at 330-31; see also Mincy v. Governor of the Commonwealth of Pennsylvania, No. 21-3263, 2022 WL 4115485, at *2 (3d Cir. Sept. 9, 2022) (per curiam) (affirming dismissal of amended complaint and the finding that further amendment would be futile where "many preventative measures that were taken from the start of the pandemic, including the suspension of in-person visits, screening of staff for the virus, inmate quarantines, and the provision of masks and cleaning materials. In light of these measures and the unprecedented and evolving nature of the pandemic, Mincy does not have a plausible claim that prison officials disregarded an excessive risk of harm."); Muata v.

---

related to a prisoner's medical needs is essentially the same for purposes of this analysis. See Moore v. Luffey, 767 F. App'x 335, 340 n.2 (3d Cir. 2019); Parkell v. Morgan, 682 F. App'x 155, 159-60 (3d Cir. 2017) (per curiam).

Hicks, No. 21-3210, 2022 WL 2526692, at *1 (3d Cir. July 7, 2022) ("Even if plaintiffs could show that Slaughter and Hicks knew of the risk posed by COVID-19, despite its unprecedented and unpredictable nature, they have failed to allege that either defendant disregarded that risk when creating the prison's policies.").

Croom fails to allege a plausible constitutional violation based on the response to COVID-19 by Defendant Carney and the Philadelphia Department of Prisons or based on the fact that he contracted COVID-19 while incarcerated. Croom's COVID-19 diagnosis alone is an insufficient basis upon which to establish a constitutional violation. See Hope, 972 F.3d at 330 (explaining that the Constitution does not require the government to entirely eliminate risk of contracting COVID-19 in a correctional setting, stating "[plaintiffs] argue that the Government must eliminate entirely their risk of contracting COVID-19. That task is not the constitutional standard, however"). Croom does not allege any facts from which it could be inferred that the conditions in which he was confined were constitutionally deficient such that they amounted to punishment or that Defendant Carney was deliberately indifferent to his health. His conclusory allegations that the COVID-19 response by the PDP was "illegal and unconstitutional" and did not provide "protection" against COVID-19 fails to state a plausible claim. Iqbal, 556 U.S. at 678.

Additionally, Croom fails to allege the requisite personal involvement to establish a basis for liability against Defendant Carney. The fact that Defendant Carney is the Commissioner of the Philadelphia Department of Prisons and is generally responsible for running the facility does not plausibly allege her personal involvement, whether on an individual or supervisory level. See Saisi v. Murray, 822 F. App'x 47, 48 (3d Cir. 2020) (per curiam) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held

liable 'simply because of his position as the head of the [agency].'" (quoting Evancho v. Fisher, 423 F.3d 347, 354 (3d Cir. 2005)); Figueroa v. Pistro, No. 21-0041, 2021 WL 601096, at *4 (E.D. Pa. Feb. 16, 2021) (dismissing Bivens claims for failure to allege personal involvement where "other than being identified as the Warden at the Philadelphia FDC, there is no other mention of Pistro in Figueroa's Complaint"). For these reasons, Croom's claims for unconstitutional punishment and deliberate indifference to medical needs based on the fact he contracted COVID-19 fail and will be dismissed pursuant to § 1915(e)(2)(B)(ii).[13] As it appears that amendment would be futile, the dismissal of Croom's COVID-19–related claims will be with prejudice. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that leave to amend claims dismissed on screening should generally be granted "unless amendment would be inequitable or futile.").

    **2.    Facility Conditions**

Construed liberally, Croom's FAC could also be read to raise a generalized claim that Croom was subjected to unconstitutional condition of confinement with respect to lead paint,

---

[13] To the extent Croom's FAC could also be construed to raise a claim based on his lack of access to the courts because his being isolated as a result of COVID policies made him "unable to do legal work," Croom has not alleged a plausible claim. "Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008). "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." Id. (quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002)); see also Jackson v. Whalen, 568 F. App' x 85, 87 (3d Cir. 2014) (per curiam) (quoting Lewis v. Casey, 518 U.S. 343, 350 (1996)) ("A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury."). This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." Christopher, 536 U.S. at 415. Croom's conclusory assertion that he was "unable to do legal work" as a result of COVID-19 isolation policies falls short of alleging a plausible claim for lack of access to the courts since he fails to identify a non-frivolous or arguable claim that was lost.

asbestos, rodents, and lack of recreation time while incarcerated at the Detention Center. (FAC at 2.) As Croom was a pretrial detainee at the time of relevant events, the Fourteenth Amendment applies to his claims. See Hubbard, 399 F.3d at 166. "Unconstitutional punishment [under the Fourteenth Amendment] typically includes both objective and subjective components." Stevenson v. Carroll, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether 'the deprivation [was] sufficiently serious" and the subjective component asks whether 'the officials act[ed] with a sufficiently culpable state of mind[.]'" Id. (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). To satisfy the subjective component, a detainee generally must allege that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. See Wilson, 501 U.S. at 298-99; see also Wilson v. Burks, 423 F. App'x 169, 173 (3d Cir. 2011) (per curiam) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)); cf. Edwards v. Northampton County, 663 F. App'x 132, 135 (3d Cir. 2016) (per curiam) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (citations omitted)).

Croom's allegations about the conditions at the Detention Center with respect to lead paint, asbestos, rodents, and lack of recreation time are exceptionally brief and conclusory. Croom does not provide specific facts regarding the severity of these alleged conditions sufficient to infer that his conditions of confinement rise to the level of an objectively serious deprivation so as to constitute a due process violation. Cf. Seiter, 501 U.S. at 305 ("Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of

a single human need exists."). Even if Croom had alleged more specifics regarding these conditions, Croom again fails to allege sufficient personal involvement to hold Defendant Carney liable in her individual capacity. As with his COVID-19 related claims, Defendant Carney's role as Commissioner, standing alone, is not sufficient. Accordingly, Croom fails to state a plausible conditions of confinement claim. However, because Croom may be able to allege additional facts sufficient to state a claim against a defendant who was personally involved, Croom will be granted leave to amend his conditions of confinement claim. In an amended complaint, Plaintiff should set forth facts regarding the severity of the alleged conditions, the degree to which he was exposed to these conditions, and the extent to which he was harmed by each, with as much specificity as possible.

### C. Claims Against the City of Philadelphia

Croom also names the City of Philadelphia. To state a claim for municipal liability, a plaintiff must allege that the Defendant's policies or customs caused the alleged constitutional violation. See Monell, 436 U.S. at 694; Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009). Allegations that simply paraphrase the standard for municipal liability, are too vague and generalized to support a claim against the City. See, e.g., Szerensci v. Shimshock, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under Monell.") (citing cases).

Croom's allegations are insufficient to state a plausible Monell claim against the City of Philadelphia with respect to any of the alleged constitutional violation he asserts. There are no allegations that the City itself had a custom or policy in place that led to a violation of his

11

constitutional rights regarding his conditions of confinement at the Detention Center. In the absence of any custom or policy allegations, Croom has failed to allege a plausible claim under § 1983 and his claims against the City of Philadelphia must be dismissed pursuant to § 1915(e)(2)(B)(ii).

### IV.  CONCLUSION

For the foregoing reasons, I will grant Croom leave to proceed in forma pauperis and dismiss Croom's FAC pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. The dismissal of the FAC will be without prejudice to Croom filing a fifth amended complaint if he can state a plausible claim against an appropriate defendant by identifying the defendant or defendants and describing what they did that resulted in a violation of his constitutional rights. Croom's Motion for Appointment of Counsel is denied without prejudice. See Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis). An appropriate Order follows, which provides further instruction as to amendment.